UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARRY J.,

                 Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

6:23-CV-06037 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Barry J. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 7), and Plaintiff's reply (Dkt. 8). For the reasons discussed below, the Commissioner's motion (Dkt. 7) is granted, and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

Plaintiff protectively filed his application for SSI on January 10, 2020.  (Dkt. 5 at 21, 101).[1]  In his application, Plaintiff alleged disability beginning January 1, 2018, due to depression, anxiety, post-traumatic stress disorder, schizophrenia, being overweight, diabetes, high blood pressure, and fat deposits around his heart.  (*Id.* at 21, 90-91).  Plaintiff's application was initially denied on May 4, 2020.  (*Id.* at 21, 123-34).  A telephone hearing was held before administrative law judge ("ALJ") Michelle S. Marcus on March 12, 2021.  (*Id.* at 21, 41-85).  On April 27, 2021, the ALJ issued an unfavorable decision.  (*Id.* at 18-35).  Plaintiff requested Appeals Council review; his request was denied on November 21, 2022, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 6-9).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

## I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since January 10, 2020, the application date. (Dkt. 5 at 23).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "morbid obesity, major depressive disorder with anxious distress, and unspecified trauma and stressor disorder." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of diabetes mellitus, high blood pressure, and history of alcohol use disorder and cannabis use disorder were non-severe. (*Id.* at 23-24). With respect to Plaintiff's representations that he suffered from lumbosacral, hip, and knee pain, the ALJ concluded that these were not medically determinable impairments. (*Id.* at 24).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 12.04, 12.06, and 12.15 in reaching her conclusion. (*Id.* at 24-25).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that:

> he can stand and walk in combination for 1 hour at a time uninterrupted for a daily total of 6 hours in an 8-hour workday and can sit for 30-minute intervals uninterrupted for a daily total of 4 hours in an 8-hour workday. He can lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently and can frequently balance. [Plaintiff] can occasionally bend at the waist, but cannot bend fully to the floor, however he can frequently perform the stooping required to go from a standing to a seated position. He can occasionally climb stairs and ramps, but can never kneel, crouch, crawl or climb ladders, ropes or scaffolds. [Plaintiff] must have no complex work, but he is capable of understanding, remembering and carrying out the basic mental demands of simple work, adapting to such work, and making simple work-related decisions. [Plaintiff] is limited to occasional interaction with the public and coworkers. [Plaintiff] can frequently interact with

supervisors. [Plaintiff] would be off-task 5% of the workday and would require one unscheduled absence every 45 days.

(*Id.* at 25). At step four, the ALJ found that Plaintiff has no past relevant work. (*Id.* at 33).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of electronic subassembler, small produce assembler, and injection molder. (*Id.* at 33-34). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 34-35).

## II.    **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ did not properly evaluate the medical opinions of his treating therapists and the consultative examiner, and (2) the ALJ failed to identify substantial evidence supporting the RFC finding.[2] (Dkt. 6-1 at 1, 13-30). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.    **Evaluation of Medical Opinions**

Plaintiff's first argument is that the ALJ failed to evaluate the medical opinions of his treating therapists and the consultative examiner in accordance with the regulations. (Dkt. 6-1 at 12).

_____

[2]      Although the ALJ also assessed a physical RFC of light work with restrictions to account for Plaintiff's impairments, Plaintiff has not challenged the assessment of the physical RFC.

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at § 416.920c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2).

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id*. at § 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec*., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how she considered the remaining factors. *Id*.

### 1.  Opinions Offered by Treating Therapists

Plaintiff first takes issue with the ALJ's assessment of the opinions offered by his treating therapists, including Jennifer Johnson, LMHC-P, Denise Hynson, LCSW, and Meredith Kahl, LCAT[3], arguing that the ALJ failed to credit the opinion of any of these sources and also that the ALJ merely selected a few isolated instances of improvement and treated them as a basis for concluding that Plaintiff is capable of working. (Dkt. 6-1 at 15). In response, the Commissioner contends that the ALJ properly considered the opinions of

---

[3]    Plaintiff also cites to an opinion offered by Catherine Fattisco, LMSW (*see* Dkt. 6-1 at 15), but Plaintiff does not provide any argument as to how the ALJ erred in assessing any such opinion.

Ms. Hynson, Ms. Kahl, and Ms. Johnson, and concluded that they were not supported by other medical evidence in the record.  (Dkt. 7-1 at 21-27).

On November 18, 2019, Ms. Hynson completed a Monroe County Department of Human Services Psychological Assessment.  (Dkt. 5 at 998-1001).  Ms. Hynson assessed that Plaintiff had "marked or serious" limitations in the following categories of mental functioning:  following, understanding, and remembering simple instructions and directions, and performing simple tasks independently; responding appropriately to co-workers or supervisors; maintaining attention and concentration for rote tasks; dealing with normal work stress; and working in coordination with or proximity to others without being unduly distracted.  (*Id*. at 1000).  Plaintiff had a "mild" limitation for regularly attending to a routine and maintaining a schedule.  (*Id*.).  Ms. Hynson opined that Plaintiff was unable to work or participate in any activities, except for treatment or rehabilitation.  (*Id*. at 1001).

The ALJ found that Ms. Hynson's assessment was "not persuasive."  The ALJ explained that the assessment of marked limitations was not supported by the record, citing to prior mental status examinations in the record.  (*Id*. at 30).  Similarly, the ALJ noted that Ms. Hynson's opinion was not consistent with Plaintiff's consultative examination a few months later, where Plaintiff again had a benign mental status exam and reported relatively good activities of daily living, consistent with at least the ability to perform simple tasks on a consistent basis.  (*Id*.); *see also Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (discussing ALJ's finding that treating physician's assessment of the plaintiff's limitations was inconsistent with the physician's own treatment notes and Plaintiff's reported activities of daily living, and concluding that "[t]he ALJ's decision not

to afford [the physician's] opinion controlling weight as the treating physician is well-supported by the record").

On August 12, 2020, Ms. Kahl opined that Plaintiff's anxiety and depression prevent him from sustaining employment. (Dkt. 5 at 31-32; *id*. at 988-91). Ms. Kahl assessed that Plaintiff had no limitations for following, understanding, and remembering simple instructions and directions, and for performing simple tasks independently; mild limitations for responding appropriately to co-workers or supervisors and maintaining attention and concentration for rote tasks; moderate limitation for regularly attending to a routine and maintaining a schedule; and marked limitations for dealing with normal work stress and working in coordination with others without being unduly distracted. (*Id*. at 990). The ALJ found that Ms. Kahl's opinion had little persuasive value, including because the record lacked support for the assessed marked limitations in dealing with stress and working with others, citing specifically to Plaintiff's own reports that he could manage his activities of daily living, including self-care tasks, cooking, and cleaning, and he was able to write music and maintained multiple relationships. (*Id*. at 31-32).

On November 20, 2020, Ms. Johnson completed a mental health assessment. (*Id*. at 882-84). Ms. Johnson found that Plaintiff was "unlimited or very good" in understanding and remembering very short and simple instructions. (*Id*. at 883). Plaintiff was "limited but satisfactory" in performing the following activities: remember work-like procedures; carry out very short and simple instructions; work in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; ask simple questions or request assistance; get along with co-workers or peers

without unduly distracting them or exhibiting behavioral extremes; and be aware of normal hazards and take appropriate precautions.  (*Id*.).  Plaintiff was "seriously limited, but not precluded" in the following areas: maintain attention for a two-hour segment; sustain an ordinary routine without special supervision; accept instructions and respond appropriately to criticism from supervisors; understand and remember detailed instructions; carry out detailed instructions; and set realistic goals or make plans independently of others.  (*Id*.). Plaintiff was "unable to meet competitive standards" in the following categories: maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; deal with normal work stress; and deal with the stress of semiskilled and skilled work.  (*Id*.).  Plaintiff had moderate limitations for interacting with others and adapting or managing himself, and marked limitations for understanding, remembering, or applying information, and concentrating, persisting, or maintaining pace.  (*Id*. at 884).  Plaintiff would be absent for more than four days per month.  (*Id*.).

The ALJ found that this opinion had little persuasive value:

[the opinion] overstates the claimant's limitations when compared to the longitudinal mental health evidence of record.  As outlined above, in October 2020, the claimant acknowledged that treatment was effective for him and that symptoms of anxiety and depression were getting under control.  I note that, in a report dated December 29, 2020, Ms. Johnson again assesses significant limitations that would preclude full-time work activity and, due to a lack of objective support in the longitudinal mental health evidence of record, I find this opinion of little persuasive value.  I also note that, Ms. Johnson assessed a moderate limit in understanding, remembering, or

applying information, but does not explain why the limit was currently moderate, when she assessed a marked limit in this area the previous month.

(*Id*. at 32 (citation omitted)).

The Court has reviewed the opinions offered by Ms. Hynson, Ms. Kahl, and Ms. Johnson, and the ALJ's evaluation of those opinions, and finds that the ALJ's assessments are proper and well-supported by the record. Although Plaintiff argues that the ALJ's assessment of these opinions was conclusory and that the ALJ relied on "a few isolated instances of improvement" for not crediting these opinions, those arguments are not supported by the record.  First, the written determination includes a lengthy discussion of Plaintiff's mental health treatment, including normal mental status examinations.  (*See, e.g.*, *id*. at 29 (noting Plaintiff's report of improved symptoms with medications); *id*. at 29-30 (discussing Plaintiff's denial of depression, suicidal ideation, and hallucinations, and normal mental status examination); *id*. at 30 (discussing normal mental status examination with consultative examiner); *id*. at 31 (discussing treatment records, which noted that Plaintiff was in a positive mood, that he utilized social media to stay connected with friends and his girlfriend, and a telehealth psychotherapy note, wherein it was noted that Plaintiff was "positive towards the writer and engaged easily"); *id*. at 32 (noting that Plaintiff reported that his depression and anxiety were getting under control); *id*. at 33 (discussing that "on October 23, 2020, the only diagnosis was an eating disorder and the claimant reported he had no mental health symptoms that would impair daily functioning"); *see also*

*id*. at 559, 933, 955, 967, 975, 979 (mental status examinations, noting no significant changes reported or observed)).

The ALJ referred to this evidence when evaluating the opinions offered by Plaintiff's therapists. This evidence undercuts the significant limitations assessed by Ms. Hynson, Ms. Kahl, and Ms. Johnson, particularly as it relates to Plaintiff's ability to interact with others and to maintain attention and concentration. In addition, and as further explained below, the limitations assessed by Ms. Hynson, Ms. Kahl, and Ms. Johnson conflict with the assessment of the consultative examiner, which is supported by an accompanying in-person examination, whereas the opinions offered by Ms. Hynson, Ms. Kahl, and Ms. Johnson were offered on fill-in-the-blank or check-box forms, with little to no explanation of why they assessed such significant restrictions.

Plaintiff points to evidence in the record that the ALJ did not specifically discuss, arguing that by highlighting certain records reflecting stable findings but not discussing Plaintiff's reports of anxiety, the ALJ engaged in impermissible cherry-picking when assessing the opinions of his therapists. (Dkt. 6-1 at 16-23). Contrary to Plaintiff's suggestion, it is clear from the written determination that the ALJ considered Plaintiff's reports of anxiety when assessing the RFC. (*See, e.g.*, Dkt. 5 at 29 (discussing Plaintiff's reports of symptoms of depression, hearing voices, and feeling paranoid); *id*. at 30 (discussing Plaintiff's reports of irritability, fatigue, social withdrawal, and psychomotor retardation); *id*. at 31 (discussing Plaintiff's reports of depression due to the quarantine)).[4]

---

[4]    The Court notes that the ALJ was not required to grant Plaintiff disability benefits based on his subjective complaints. *See Andrew P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00029 EAW, 2024 WL 798159, at *6 (W.D.N.Y. Feb. 27, 2024) ("Much of the evidence

The ALJ discussed this evidence but concluded that Plaintiff could perform simple, unskilled work.  The ALJ is not required to discuss every shred of evidence in the record in reaching a conclusion—rather, the ALJ must articulate how the disability determination is supported by substantial evidence, and provide an explanation that allows for meaningful review on appeal.  *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." (citation omitted)).  The ALJ did so in this case, and Plaintiff's arguments amount to no more than mere disagreement with how the ALJ weighed the opinion evidence.  Accordingly, remand is not required on this basis.

### 2.  Opinion Offered by Consultative Examiner

Plaintiff next challenges the ALJ's assessment of the opinion offered by Todd Deneen, Psy.D., the consultative examiner.  (Dkt. 6-1 at 23).  Dr. Deneen examined Plaintiff on March 3, 2020.  (Dkt. 5 at 534-37).  Upon examination, Dr. Deneen found that Plaintiff's demeanor was cooperative, his social skills were adequate, and he was adequately groomed.  (*Id*. at 535).  Plaintiff had fluent and clear speech, coherent and goal-directed thought processes, euthymic mood, and he was oriented to person, place, and time.  (*Id*.).  His memory skills were intact, but his attention and concentration were mildly

---

cited by Plaintiff is based on his own subjective complaints of his mental functioning.  It is well-settled that while the ALJ is required to consider Plaintiff's subjective complaints, the ALJ is not required to grant disability benefits based on subjective complaints alone, particularly when those subjective complaints are contradicted by other evidence in the record."); *see also Conetta v. Berryhill*, 365 F. Supp. 3d 383, 406 (S.D.N.Y. 2019) ("case law holds that an ALJ is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record" (quotations and citations omitted)).

impaired due to attention deficits, and his intellectual functioning was average to below average. (*Id*.). His insight and judgment were fair. (*Id*.). Dr. Deneen found that Plaintiff would have a mild limitation for sustaining concentration and performing a task at a consistent pace, regulating emotions, controlling behavior, and maintaining well-being. (*Id*. at 536).

The ALJ discussed this opinion in the written determination and found it to be "highly persuasive," including because the mental status examination was an objective measure of Plaintiff's mental functioning. (*Id*. at 30). In addition, the ALJ noted that Dr. Deneen's opinion was consistent with both his mental status exam findings, and Plaintiff's own reported activities of daily living. (*Id*.). Finally, the ALJ noted that Dr. Deneen's indication that Plaintiff would benefit from vocational training and rehabilitation was consistent with his mental limitations not being at a disabling level. (*Id*.).

Plaintiff argues that the ALJ failed to meaningfully evaluate mental status examinations in the written determination, that the ALJ failed to compare Dr. Deneen's findings with any other evidence in the record, and also that as a consultative examiner, Dr. Deneen's opinion is not entitled to controlling weight since it was based on one examination without any review of the record. (Dkt. 6-1 at 23-25). The Court disagrees. First, it is clear from the record that the ALJ considered Dr. Deneen's findings in conjunction with other evidence in the record, including the opinions offered by Plaintiff's therapists and Plaintiff's activities of daily living. (*See, e.g.*, Dkt. 5 at 30 (discussing opinion offered by Ms. Hynson, as compared to exam conducted by Dr. Deneen, and Plaintiff's reported activities of daily living)). The written determination further contains

an extensive discussion of Plaintiff's mental health treatment records, including mental status examinations (*see id*. at 24-25, 29-33), and therefore it is clear to the Court that the ALJ considered Plaintiff's longitudinal mental health record when assessing Dr. Deneen's opinion.

Plaintiff's argument suggests that it was error for the ALJ to credit the opinion of Dr. Deneen because he examined Plaintiff on only one occasion.  However, it is well-settled that "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Bump v. Comm'r of Soc. Sec.*, No. 5:15-CV-1077 (GTS), 2016 WL 6311872, at *4 (N.D.N.Y. Oct. 28, 2016).  Because Plaintiff has failed to identify any specific error in the ALJ's assessment of Dr. Deneen's opinion, which is supported by other evidence in the record and his own examination of Plaintiff, remand is not required on this basis.

In sum, Plaintiff's arguments regarding the ALJ's evaluation of opinion evidence amounts to no more than his disagreement with the ALJ's conclusions, and this is not a basis for reversal.  *See, e.g., Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.").  Accordingly, remand is not required on this basis.

## B.    The RFC Assessment

Plaintiff's second and final argument is that the ALJ failed to identify substantial evidence supporting the RFC assessment.  (Dkt. 6-1 at 25).  Specifically, Plaintiff argues

that the record does not contain substantial evidence that Plaintiff would be off-task only five percent of the time and absent from work once every 45 days, and also that there is no evidentiary support for the restriction limiting Plaintiff to occasional interactions with the public and his co-workers, and frequent interactions with supervisors.  (*Id*. at 25-30).  In response, the Commissioner contends that substantial evidence, including the opinion offered by Dr. Deneen, supports the mental RFC.  (Dkt. 7-1 at 6-16).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in h[er] decision," *id*., an ALJ is not a medical professional, and therefore she "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).  At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement

or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

Plaintiff takes issue with the fact that the ALJ assessed an off-task and absence limitation, despite finding that the opinions offered by his therapists were not persuasive. (Dkt. 6-1 at 25-26).   Contrary to what Plaintiff's argument suggests, "an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation." *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021) (citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020)). Accordingly, to the extent Plaintiff's argument is premised on the ALJ affording Plaintiff an off-task and absence limitation without a medical opinion assessing that very same limitation, that argument is not supported by the law, and courts have previously rejected it on several occasions. *See, e.g., Michael K. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1467-DB, 2022 WL 3346930, at *10 (W.D.N.Y. Aug. 12, 2022) ("just because there is no explicit opinion or subjective complaint that mirrors an RFC limitation does not mean there was an error"); *Jennifer O. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1474 (WBC), 2022 WL 2718510, at *4 (W.D.N.Y. July 13, 2022) ("an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion"); *see also Thomas S. v. Comm'r of Soc. Sec.*, No. 19-CV-1663-FPG, 2021 WL 1293105, at *6 (W.D.N.Y. Apr. 7, 2021) ("Overall, although the ALJ's 5% off-task limitation did not directly correspond to a medical opinion in the record, the ALJ's determination was supported by substantial evidence.  In concluding that Plaintiff would

be off-task 5% of the workday, the ALJ relied on the record as a whole, including medical opinion evidence, objective mental status examinations, and Plaintiff's testimony concerning his daily activities.").

Here, it is clear to the Court that the ALJ did not formulate the mental limitations in the RFC from whole cloth. Rather, the ALJ considered the multiple medical opinions in conjunction with the other evidence in the record, including Plaintiff's reports of his functioning, in assessing the RFC, and the ALJ adequately explained how he incorporated these limitations into the RFC. (*See, e.g.,* Dkt. 5 at 33 (explaining finding that Plaintiff is limited to occasional interaction with the public and coworkers but he can frequently interact with supervisors, which is consistent with Plaintiff's report that he has friends, uses social media, and has improved anxiety to the point he can now stand in lines, but due to possible distraction from psychological symptoms, providing Plaintiff with ability to be off-task five percent of the workday, as well as one unscheduled absence every 45 days); *id*. (noting that "the mental limitations are related to some issues in concentration, persistence and maintaining pace, as well as social limits due to some paranoid thinking, but the records do not always show much wrong and . . . euthymic mood is often noted.")).

Finally, the Court notes that the RFC's restrictions for social interaction, and time off-task or absent, are entirely consistent with (or even more generous than) the opinion offered by Dr. Deneen. Specifically, Dr. Deneen opined that Plaintiff had no limitations for interacting adequately with supervisors, co-workers, and the public, or for sustaining an ordinary routine and regular attendance at work, but that he would have a mild limitation for sustaining concentration and performing a task at a consistent pace. (*See* Dkt. 5 at 536).

The RFC more than accounts for these limitations, providing Plaintiff with some restrictions on social interaction and time off-task, to account for difficulties sustaining attention and concentration. *See Deshantal W. v. Comm'r of Soc. Sec.*, No. 1:21-cv-624-DB, 2024 WL 1157048, at *12 (W.D.N.Y. Mar. 18, 2024) ("the ability to perform unskilled work . . . is consistent with even moderate [mental] limitations." (collecting cases)). In sum, it is clear to the Court how the ALJ arrived at the RFC, which is supported by substantial evidence in the record. Plaintiff has failed to show that greater restrictions are required, and remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 7) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 26, 2024
       Rochester, New York